**Lyle and Barbara GRINDHEIM,
Plaintiffs,**

v.

**SAFECO INSURANCE COMPANY
OF AMERICA, Defendant.**

**HUTTERIAN BRETHREN OF DEERFIELD, as a Church, a Montana corporation, a/k/a Deerfield Colony, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY
OF AMERICA, Defendant.**

**Nos. CV–92–157–GF, CV–92–180–GF.**

United States District Court,
D. Montana,
Great Falls Division.

Nov. 6, 1995.

John C. Hoyt, Alexander Blewett, III, Hoyt & Blewett, Great Falls, MT, A. Clifford Edwards, Edwards Law Firm, Billings, MT, for Lyle Grindheim, Barbara Grindheim.

Shelton C. Williams, Williams & Ranney, P.C., Missoula, MT, for Safeco Insurance Company of America.

### *MEMORANDUM DECISION*

HATFIELD, Chief Judge.

#### I.

This action has its genesis in a civil lawsuit instituted in the District Court for the Tenth Judicial District, Fergus County, Montana, by Lyle and Barbara Grindheim against the Hutterian Brethren of Deerfield (a/k/a Deerfield Colony). *Grindheim v. Deerfield Colony,* cause No. DV–92–74 ("Grindheim action"). In the Grindheim action, the Grindheims sought compensatory and punitive damages for injuries they sustained relative to the use and enjoyment of their property resulting from the conduct of the Deerfield Colony; an adjoining landowner. Specifically, the Grindheims claimed injury resulting from the Deerfield Colony's disposal of human and animal waste. The Deerfield Colony tendered defense of the Grindheim action to Safeco Insurance Company of America ("Safeco") pursuant to a farm and ranch liability insurance policy issued by Safeco to the Deerfield Colony.[1] Safeco, however, declined the tender of the defense.[2]

The Grindheim action ultimately settled when the Deerfield Colony confessed judgment in favor of the Grindheims in the sum of $500,000.00. Subsequently, the Grindheims and the Deerfield Colony executed an agreement whereby the Colony assigned its rights under the subject insurance policy to the Grindheims in exchange for a covenant not to execute against the Colony upon the judgment.

On November 12, 1992, the Grindheims instituted an action in this court, *Lyle and Barbara Grindheim v. Safeco Ins. Co. of America,* No. CV–92–157–GF, seeking, in their capacity as assignees of the rights of the Deerfield Colony under the insurance contract at issue, to enforce the underlying consent judgment based upon Safeco's purported breach of the terms of the insurance contract, and breach of the duty of good faith and fair dealing attendant to that contract. On December 30, 1992, the Deerfield Colony instituted a separate action in this court, *Hutterian Brethren of Deerfield, a/k/a Deerfield Colony v. Safeco Ins. Co. of America,* No. CV–92–180–GF, seeking to recover the attorney's fees and costs the Colony incurred in defending the Grindheim action, as well as the costs and expenses associated with (1) remedying the property damage incurred by the Grindheims; and (2) preventing any future damage to the property of the Grindheims. On April 5, 1993, the court entered an order consolidating the two actions for all pretrial proceedings.[3]

The consolidated actions are presently before the court upon the parties' cross-motions for summary judgment, presented pursuant to Fed.R.Civ.P. 56. The issue dispositive of the parties' respective motions for summary judgment is whether or not the uncontroverted facts of record, establish that Safeco breached its duty, under the contract of in-

1. The Deerfield Colony originally purchased liability insurance coverage from Safeco for a one year term beginning October 15, 1985, and terminating on October 15, 1986. Thereafter, the Deerfield Colony purchased subsequent liability insurance coverage from Safeco for the ensuing years, until it cancelled its coverage effective October 15, 1992. For the policy year beginning October 15, 1990, Safeco altered its farm and ranch liability policy to include, *inter alia,* a more expansive "absolute" pollution exclusion. Although the Grindheims and the Deerfield Colony assert Safeco altered the policy improperly, that issue is immaterial to the question presently before the court.

2. In response to the Deerfield Colony's tender, Shirley Ann LeFever, an adjuster for Safeco,

responded by correspondence to Bill Spoja, an attorney representing the Deerfield Colony, stating as follows:

> As you are aware, because of the allegations made in the complaint, we are unable to accept the defense of the case at this time. You have agreed to appear for the Colony so as to protect them from default.

3. The court's jurisdiction over the subject matter of this controversy is based upon diversity of citizenship. 28 U.S.C. § 1332. Accordingly, the substantive law of Montana controls the rights and liabilities of the parties under the insurance contracts at issue. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Caesar Electronics, Inc. v. Andrews,* 905 F.2d 287, 289 n. 3 (9th Cir.1990).

surance at issue, to defend the Deerfield Colony with respect to the Grindheim action.

## II.

It is well established under Montana law, that an insurer's duty to defend its insured arises when the insurer, through reference to pleadings, discovery, or final issues declared ready for trial, has received notice of facts representing a risk covered by the terms of the policy. *See, Lindsay Drilling & Contracting v. United States Fidelity & Guaranty Co.*, 208 Mont. 91, 676 P.2d 203, 205 (1984); *Northwestern National Cas. Co. v. Phalen*, 182 Mont. 448, 597 P.2d 720, 727 (1979); *McAlear v. St. Paul Ins. Co.*, 158 Mont. 452, 493 P.2d 331, 334 (1972); *see also, Liberty Bank of Montana v. Travelers Indemnity Co.*, 870 F.2d 1504, 1506 (9th Cir. 1989). This rule contemplates the institution of an action by a claimant against the insured. *See, Fisher, v. Hartford Accident & Indemnity Co.*, 329 F.2d 352, 353 (7th Cir. 1964). Consequently, the rule is often restated to acknowledge that an insurer's duty is ordinarily "triggered" when the insured, or someone on the insured's behalf, tenders the defense of an action potentially within the policy coverage. *See, e.g., Hartford Accident & Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir.1985). Ordinarily, the initial determination as to whether the duty to defend has been "triggered" is determined upon the insurer's review of the allegations set forth in the complaint instituting an action against the insured, *see, Atcheson v. Safeco Ins. Co.*, 165 Mont. 239, 527 P.2d 549, 552 (1974); *Aetna Cas. & Surety Co. v. First Security Bank of Bozeman*, 662 F.Supp. 1126, 1128 (D.Mont.1987), *citing, McAlear v. St. Paul Ins. Co.*, 158 Mont. 452, 493 P.2d 331, 334 (1972), and the duty to defend arises if the complaint against an insured alleges facts, which if proven, would result in coverage. *Stillwater Condominium v. American Home Assurance Co.*, 508 F.Supp. 1075, 1077 (D.Mont.1981), *aff'd*, 688 F.2d 848; *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1981). An insurer who refuses, without justification, to defend its insured, will be estopped from denying coverage. *See, Hartford Accident & Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d at 1382; *see also,*

*Independent Milk & Cream Co. v. Aetna Life Ins. Co.*, 216 P. 1109, 68 Mont. 152 (Mont. 1923).

The Grindheims, as assignees, and the Deerfield Colony, in its own right, contend, in essence, that Safeco breached its duty to provide the Deerfield Colony a defense to the Grindheim action and should now be estopped from denying coverage under the insurance contract. Safeco, on the other hand, contends its duty to defend was not "triggered" because the complaint in the Grindheim action did not allege facts, which had those facts been proven, would have resulted in coverage under the policy.

Analysis of the parties' respective positions must necessarily begin with a review of the allegations of the complaint filed in the Grindheim action, which were stated as follows:

2. [The Grindheims], as successors to a water right dating back to 1893, have a legal right to water originating from a spring located in a coulee near the Defendant Colony's buildings and animal pens and barns and dwellings for Colony habitants.

3. For years (decades) the Defendant Colony has dumped raw sewage from their dwelling waste and from their animal pens and corrals and barns and other buildings and areas from which mammal and fowl waste is generated right into the coulee untreated, just above (upstream) from [the Grindheims'] water right source.

4. Further, the coulee mentioned drains to and empties into the Judith River just a few hundred feet from [the Grindheims'] house. The drainage runs over [the Grindheims'] land and runs right across the road from [the Grindheims'] buildings, fields and home. The sewage drainage from Defendant Colony runs through [the Grindheims'] irrigation ditch.

5. The Colony's sewage, for years and years has polluted [the Grindheims'] water and land, has damaged [the Grindheims] and their family as it has omitted [sic] foul odors offensive to the [Grindheims] and their family, ruining their property and seriously interfering with their comfortable enjoyment of and use of their property and

lives thereon. [The Grindheims] and their family's health has been endangered.

6. The [Colony's] actions set out above have caused said damages to [the Grindheims] and their family and [the Colony's] actions constitute negligence, nuisance, trespass and unlawful interference with [the Grindheims'] rights .to their water source and rights thereunder to include matters stated above.

7. [The Grindheims] have for years complained of [sic] [Colony] and the State of Montana about [the Colony's] actions regarding their discharge of sewer [sic] as set forth. [The Grindheims] are informed, and therefore allege, that for a decade [the Colony] [has] ignored State orders and directions to stop [its] sewage practices and to comply with State law governing sewage discharge and disposal which have been and are affecting [the Grindheims] and their family.

Review of the farm and ranch liability policy at issue reveals the existence of several provisions of pertinence to the present controversy.[4] The provisions of the policy delineating liability coverage provided as follows:

COVERAGE G—FARM LIABILITY

If a claim is made or a suit is brought against **any insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

(a) pay up to the limit of insurance for the damages for which the **insured** is legally liable, and

(b) provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may make any investigation and settle any claim or suit that we decide is appropriate.

We are not obligated to pay any claim or judgment or to defend any suit after the applicable limit of insurance has been exhausted by payment through judgments or settlements.

The policy defines the term "occurrence" as follows:

**Occurrence** means an accident, including exposure to conditions which results, during the policy period, in bodily injury or property damage.

The farm and ranch liability policy also contained the following two exclusions of pertinence to this controversy:

4. EXCLUSIONS

(a) Coverage G ... [does] not. apply to:

(1). **bodily injury** or **property damage** which is expected or intended by the **insured.**

. . . . .

(8) injury[5] or damage caused by or resulting from a **Pollution Incident** unless injury or damage:

1. occurs suddenly during the policy period, and

"**Pollution incident**" means the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any "pollutants."

"Pollutants," within the meaning of the policy, are defined in the following terms:

"**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including: smoke, vapor, soot, fumes, acids, alkalis, chemicals, fertilizers (whether of plant or animal origin, composed of other natural substances, or chemically formulated) and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

4. The provisions set forth are those contained in the farm and ranch liability policies issued to the Deerfield Colony, on a yearly basis, from October 15, 1985, through October 15, 1992. As previously noted, the policy issued for the policy years beginning October 15, 1990, was amended· by Safeco to include a more expansive, so-called "absolute," pollution exclusion. *See*, n. 1 *supra.* Safeco accomplished the amendment by modifying the "Exclusions" section of the liability coverage provisions, at section 6a(8)(a), and the attendant "Definitions" section, to provide as follows:

> 6. EXCLUSIONS
> a. **Coverage G** ... [does] not apply to:
> \* \* \* \* \* \*
> (8)(a) "bodily injury" or "property damage" caused by a pollution incident: ...
> A "pollution incident," within the meaning of the policy, is defined in the following terms:

5. The more expansive exclusion referenced in n. 4, *supra,* inserted the adjective "bodily" to modify the noun injury in section 4(a)(8).

2. is unknowingly caused, and

3. would not have been expected or intended by a reasonably prudent person in [the insured's] position.

A "pollution incident", within the meaning of the policy, is defined in the following terms:

**Pollution incident** means the emission, discharge, release or escape of any solid, liquid, gaseous, or thermal contaminant, irritant, or pollutant into or upon land, the atmosphere, or any water.

The position advocated by both the Grindheims and the Deerfield Colony is premised upon their conclusion that the allegations of the complaint in the Grindheim action embody factual assertions representing a risk potentially covered by the farm and ranch liability policy. In failing to acknowledge the allegations assert facts giving rise to a risk potentially covered by the policy and, accordingly, rejecting the Deerfield Colony's tender of the defense, Safeco, in the opinion of the Grindheims and the Deerfield Colony, breached the duty to defend its insured.

Safeco, however, contends its decision was based upon the fact there existed no liability coverage under the policy with respect to the allegations advanced by the complaint in the Grindheim action. Safeco's decision in this regard was predicated upon two alternate bases. First, Safeco concluded the factual assertions in the complaint, even if assumed as true, did not establish the existence of damages resulting from an "occurrence", because the damages were not caused by an "accident" but the intentional conduct of the Deerfield Colony. Second, Safeco concluded the coverage was defeated by the pollution exclusion because the assertions of fact in the complaint claim damage resulting from a "pollution incident" within the meaning of the policy.

 In determining which of the parties is entitled to summary judgment upon the issue of whether Safeco breached the duty to defend the Deerfield Colony, the court reiterates that the duty to defend attendant to a liability insurance contract is not "dependent on the duty to indemnify; is distinct from,

different from, independent of, and broader than the duty to indemnify" created by the same insurance contract. *See, St. Paul Fire & Marine Ins. Co. v. Thompson*, 150 Mont. 182, 433 P.2d 795, 799 (1967) (citation omitted); *see also, Safeco Ins. Co. v. Andrews*, 915 F.2d 500, 501 (9th Cir.1990). Consequently, as previously noted, the duty to defend arises if a complaint against an insured alleges facts, which if proven, would result in coverage. *Stillwater Condominium v. American Home Assur. Co., supra; see also, Atcheson v. Safeco Ins. Co., supra.* At the same time, where the allegations of the complaint demonstrate that no coverage exists under the subject policy, the insurer's duty to defend does not arise nor does the insurer have a duty to make any further investigation. *Aetna Casualty & Surety Co., supra; see also, Graber v. State Farm Fire & Casualty Co.*, 244 Mont. 265, 797 P.2d 214, 217 (1990); *Daly Ditches Irrigation Dist. v. National Surety Corp.*, 234 Mont. 537, 764 P.2d 1276, 1279 (1988).

 The determination of whether the allegations of a complaint assert facts which represent a risk potentially covered by the terms of an insurance contract, necessarily calls upon the court to construe the terms of the insurance contract. Construction of insurance contracts in Montana is, of course, governed by the general law of contract interpretation contained in Title 28, Chap. 3, Montana Code Annotated, and the case law which has developed thereunder in the context of insurance. *Page Wellcome Professional Service v. Home Ins. Co.*, 758 F.Supp. 1375, 1379 (D.Mont.1991). Consequently, absent an ambiguity, the language of an insurance contract governs its interpretation. *See, Schell v. Peters*, 147 Mont. 21, 410 P.2d 152, 155 (1966); Mont.Code Ann. § 28-3-401 (1993). The interpretation of the language of a contract and whether an ambiguity exists is a question of law for the court to determine in the first instance. *See, Dagel v. Farmers Ins. Group*, 903 P.2d 1359 (Mont.1995); *Schell, supra*, 410 P.2d at 155; *United States Fidelity & Guaranty Co. v. Newman*, 656 F.2d 457, 459 (9th Cir.1981).[6]

---

6. In assessing whether an ambiguity exists in an

insurance contract, the court remains mindful of

## III.

■ In light of the broad nature of the duty to defend imposed upon Safeco by the insurance policy under scrutiny, Safeco's conclusion that the factual assertions of the complaint in the Grindheim action, assumed as true, do not allege damages emanating from an "occurrence" within the meaning of the policy is in error. The conclusion of Safeco is based upon the erroneous suggestion the factual assertions delineated in the complaint unequivocally establish that the property damage, of which the Grindheims complained, was "intended" or "expected" by the Deerfield Colony.[7] Safeco now asks this court to accept its conclusion, and find the factual assertions under scrutiny state, as a matter of law, that the damages complained of by the Grindheims were expected or intended by the Deerfield Colony.

The penchant of Safeco to read the factual assertions advanced in the Grindheim action narrowly is, perhaps, understandable from the perspective of an insurer. The obligation to provide a defense, however, operates to preclude Safeco, as an insurer, from inter-

preting the allegations solely from its perspective. Rather, the breadth of the obligation to defend imposed upon Safeco precludes Safeco from interpreting the factual assertions narrowly, and mandates Safeco to construe the factual assertions from the perspective of the insured. The Montana Supreme Court recently emphasized this precise point in *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 256 Mont. 211, 845 P.2d 746 (1993), when the court stated: "the intent of the policy is to insure the acts or omissions of the insured, including [its] intentional acts, excluding only those in which the resulting injury is either expected or intended from the insured's standpoint." *Portal*, 845 P.2d at 749, citing, *Northwestern National Casualty Co. v. Phalen*, 182 Mont. 448, 597 P.2d 720, 726 (1979).[8]

■ The farm and ranch liability policy issued by Safeco to the Deerfield Colony, like the policy in *Portal*, was intended by the parties to that contract to insure both intentional and unintentional acts or omissions of the Deerfield Colony, excluding from cover-

---

two well-established principles to be followed in interpreting an insurance contract. First, the terms are to be interpreted according to what a "reasonable person in the position of an insured would understand them to mean." *St. Paul Fire & Marine Ins. Co. v. Thompson, supra,* 433 P.2d at 795. Restated, the determination of whether an ambiguity exists in an insurance policy requires an examination of the language utilized from the viewpoint of a consumer of average intelligence, not trained in the law or in the insurance business. *See, e.g., Whispering Creek Condominium Owner Assoc. v. Alaska National Co.,* 774 P.2d 176 (Alaska 1989); *Sparks v. Republic National Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). Second, "exclusions and words of limitation in a policy must be strictly construed against the insurer regardless of whether or not they are ambiguous." *Aetna Ins. Co. v. Cameron,* 194 Mont. 219, 633 P.2d 1212, 1214 (1981); *see also, Farmers Union Mutual Ins. Co. v. Oakland,* 251 Mont. 352, 825 P.2d 554, 556 (1992).

7. Ms. LeFever succinctly stated Safeco's position in the letter of September 8, 1992, in the following terms:

Thus, there also is no coverage under the policies because there is no 'occurrence', and because the damages alleged are, in legal effect, alleged to have been expected or intended by the Colony.

8. The policy at issue in *Portal,* defined "occurrence" in the following terms:

[A]n accident or event including continuous repeated exposure to conditions, which results, during the policy period in **PERSONAL INJURY** or **PROPERTY DAMAGE** neither expected nor intended from the standpoint of the **INSURED.**

The plaintiff, Portal Pipe Line Company, operated a crude oil pipe line running from Reserve, Montana, to Minnesota. Ashland had transported crude oil to its refinery via Portal's pipe line. Ashland sued Portal for damages purportedly resulting from Portal's decision authorizing certain shippers to inject a volatile high vapor pressure butane-gas (BG mix) into its common stream of crude oil. 845 P.2d at 747. Portal asserted the damage claimed by Ashland was neither an intended nor expected result of its decision to allow the BG mix into its pipe line and therefore, Ashland's negligence claims were a covered "occurrence". 845 P.2d at 748–49. The Montana Supreme Court rejected Portal's argument, concluding Ashland's claims, although phrased in terms of negligence, did not constitute a covered "occurrence" because "Portal knew, despite its subjective contentions to the contrary, that its actions were expected to cause injury to Ashland's refinery." 845 P.2d at 749.

age only bodily injury or property damage that was expected or intended by the Deerfield Colony. Consequently, the determinative issue reduces to whether or not the factual assertions set forth in the complaint in the Grindheim action are properly interpreted as alleging the damages, claimed by the Grindheims to have resulted from the Deerfield Colony's waste disposal practices, were expected or intended by the Colony.

In resolving this issue, the court notes that once the Deerfield Colony received notice that its waste disposal practices were having an adverse effect upon adjoining land, or water on the land, any subsequent damage to that land or water could hardly be unexpected. The Deerfield Colony would, at that point in time, have occupied essentially the same position as the plaintiff in *Portal*, and would be precluded from arguing that the damage sustained by the adjoining land owner resulting from the waste disposal practices was unexpected. A factual issue exists, however, regarding the point in time when the Deerfield Colony was on notice that its waste disposal practices were having an adverse effect upon adjoining landowners.

■■■■ From the record, as presently developed, it appears the Deerfield Colony arguably received notice in May, 1991, when Robert Foster of the Water Quality Bureau of the State of Montana, investigated a complaint of swine feedlot waste drainage emanating from the Deerfield Colony. Foster's field report indicates he discussed possible penalties and remedies for solving the problems with a representative of the Deerfield Colony. The damages prayed for in the Grindheim action, however, covered a period from June 5, 1989, to the date of judgment.[9] Therefore, even assuming the Deerfield Colony was put on notice in May, 1991, regarding the effect of its waste disposal practices, the fact remains the complaint in the Grindheim

action advanced potentially covered claims for the unexpected and unintended damage caused by the Colony's intentional waste disposal activity prior to May of 1991. The court, therefore, is precluded from finding, as a matter of law, that Safeco's duty to defend was not "triggered" by the factual assertions set forth in the complaint in the Grindheim action.[10]

### IV.

Notwithstanding the fact Safeco erred in its reliance upon the "expected" or "intentional" exclusion to liability coverage, there remains the issue of whether the damages alleged in the Grindheim action were the result of a "pollution incident", as defined by the policy, and therefore, fall within the pollution exclusion to the policy. Safeco has consistently maintained that all claims for damages in the Grindheim action were alleged to be caused by the Deerfield Colony's discharge and release of raw human and animal "sewage"; "sewage", in the opinion of Safeco, being a "solid" or "liquid" "contaminant" or "pollutant" within the meaning of those terms as set forth in the definition of "pollution incident".

The Grindheims and the Deerfield Colony, as might be expected, take quite a different view regarding the construction to be afforded the definition of "pollution incident" as used in the policy. The challenge they mount to the argument advanced by Safeco is two-pronged in nature. First, the Grindheims and the Deerfield Colony simply implore the court to recognize the language of the pollution exclusion, and the related definition of "pollution incident" are ambiguous and, consequently, must be construed against Safeco. Second, the Grindheims and the Deerfield Colony contend there exists an ambiguity between the definition of "occurrence" utilized in the liability coverage sec-

9. The Grindheim action advanced claims for relief predicated upon a continuing tort and, as a result, the recoverable damages were limited to damages accruing within the statutory period preceding commencement of the action. *See, Shors v. Branch*, 221 Mont. 390, 720 P.2d 239, 243 (1986), *citing, Haugen Trust v. Warner*, 204 Mont. 508, 665 P.2d 1132, 1135 (1983). Consequently, the Grindheims' property damage claims accruing within two and three years, respectively, of June 5, 1992, were recoverable.

10. The duty to defend with respect to a particular complaint is "triggered" regardless of the fact that only a portion of the complaint alleges facts, which if proven, would result in coverage. *See, Home Ins. Co. v. Pinski Brothers, Inc.*, 160 Mont. 219, 500 P.2d 945, 949–50 (1972).

tion of the policy ("exposure to conditions ... during the policy period, ...") and the so-called "sudden, unintended and unexpected" provision of the pollution exclusion ("occur suddenly during a policy period, ... would not have been expected or intended by a reasonably prudent person").

The former aspect of the ambiguity argument presented by the Grindheims and the Deerfield Colony is based primarily upon the proposition that the Colony's utilization of "pig sewage", generated from its pig raising operation, as a fertilizer on its agricultural lands is not an activity falling within the definition of "pollution incident" as used in the policy. In the opinion of the Grindheims and the Deerfield Colony, the pollution exclusion would not operate to relieve Safeco of its duty to defend the Deerfield Colony with respect to claims emanating from that entity's use of "pig sewage" as a fertilizer, regardless of whether the pollution exclusion would bar coverage for claims relating to the Deerfield Colony's discharge of "raw sewage" into the coulee. This argument, of course, assumes the complaint in the Grindheim action sufficiently alleged the existence of damages resulting from the Deerfield Colony's use of "pig sewage" as a fertilizer on its agricultural fields. Safeco vehemently disputes the complaint in the Grindheim action can be construed as including a claim of damage from odor resulting from the spreading of "pig sewage" on the Colony's agricultural fields.

Review of the operative allegations of the complaint in the Grindheim action reveals there exists no specific allegations regarding existence of an odor resulting from the Deerfield Colony's practice of utilizing "pig sewage" as fertilizer on its agricultural fields. The complaint does, however, contain allegations suggesting the existence of a "nuisance" in the form of "foul odors" emitted from the Colony's "sewage". Safeco argues the reference in the Grindheims' complaint to "foul odors" cannot be divorced from the prefatory language, which refers to "[T]he Colony's sewage". The prefatory language, Safeco insists, when read in light of the other allegations of the Grindheim complaint, clearly reflects the "odor" of which the Grindheims complained was the odor emanating from the "raw sewage" discharged by the Deerfield Colony into the coulee.[11]

Despite the arguments of the Grindheims and the Deerfield Colony to the contrary, a review of the complaint in the Grindheim action reveals the factual assertions advanced pertained solely to the Colony's practice of discharging raw sewage into the coulee, the drainage from which, ran upon the Grindheims' land and through their irrigation ditch.[12, 13] The court's determination that

11. The court finds it important to note, for purposes of completeness, that the first reference to the Deerfield Colony's apparent practice of spreading "pig sewage" upon its agricultural lands, in relation to the "odor" of which the Grindheims complained, appears in the papers submitted by the Grindheims and the Deerfield Colony in support of their respective motions for partial summary judgment now under consideration by this court.

12. The court is also constrained to reject the contention of the Grindheims and the Deerfield Colony that Safeco, in an investigation conducted after the filing of the complaint in the Grindheim action, discovered the fact the Grindheims were seeking damages for the Deerfield Colony's practice of using the "pig sewage" as fertilizer. The Grindheims and the Deerfield Colony rely upon the report of Joe E. Backen, Safeco's Claims Adjuster, who inspected the operations of the Colony relative to the Grindheim action. Although Backen's report does discuss the Colony's practice of collecting animal waste and utilizing it as fertilizer, there is nothing to indicate he suspected the Grindheims asserted a claim for damages predicated upon this practice of the Colony. On the contrary, the discussion of the Colony's operation was aimed at establishing the fact that not all of the Colony's animal waste was discharged in the manner alleged in the complaint.

13. The pre-discovery disclosure statement filed by the Grindheims in this action (*see*, Rule 200–5(a), RULES OF PROCEDURE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA) summarizes the factual basis underlying their claims as follows:

The Deerfield Hutterite Colony purchased a large block of land located generally east and south of the farm owned by Lyle and Barbara Grindheim. The Colony has its headquarters where numerous families reside on a plateau or bench several hundred feet higher than the Judith River bottom where the Grindheims' farm is located and where they live. At their headquarters, the Colony raises swine, cattle and poultry and has done so for many years

Safeco's assessment of its obligation to defend the Deerfield Colony in the Grindheim action legitimately focused upon damages allegedly sustained by the Grindheims as a result of the Colony's conduct in discharging "raw sewage" into the coulee described in the complaint in the Grindheim action, does not, however, terminate the present inquiry.

In rejecting the tender of the defense of the Grindheim action, Safeco assuredly relied upon the pollution exclusion advising the Colony as follows:

> All the 'injury or damage' alleged in the Complaint is alleged to have been 'caused by or resulting from' the 'discharge, release or escape of' the Deerfield Colony's raw sewage. In the common understanding of the terms, raw sewage is obviously a 'solid' or 'liquid' 'contaminant . . . or pollutant.' . . . The Complaint clearly alleges the existence of a 'pollution incident', as that term is defined in the policy. And the only damages and injuries alleged are clearly alleged to result solely from the alleged 'pollution incident.'

Because the challenge presented by the Grindheims and the Deerfield Colony to Safeco's reliance upon the pollution exclusion is based primarily upon the "odor," "nuisance" and "trespass" allegations of the complaint in the Grindheim action, the question which remains for determination is whether Safeco was justified in concluding the pollution exclusion would operate to preclude coverage for "nuisance" and "trespass" damages resulting from the "odor" emanating from the "raw sewage" discharged into the referenced coulee. The answer is no.

Litigation involving the construction and application of pollution exclusion clauses

in liability insurance policies has literally exploded in recent years, resulting in a legion of reported cases, from both state and federal courts, wherein various versions of the pollution exclusion have come under scrutiny in an endless variety of factual circumstances. *See*, WILLIAM B. JOHNSON, ANNOTATION, *Construction and Application of Pollution Exclusion Clause in Liability Insurance Policy*, 39 A.L.R.4th 1047 (1985); COUCH ON INSURANCE SECOND (Rev.Ed.) § 44A:122 (1981 and supp. 1995). The present case, like so many of the reported cases, calls upon the court to determine whether the terms utilized in the exclusion under scrutiny are, or are not ambiguous. *See, e.g., Weber v. IMT Ins. Co.*, 462 N.W.2d 283 (Iowa 1990) (the term "waste material" encompassed hog manure that was spilled on roadway). Ambiguity can only exist, of course, where "the wording or phraseology of the contract is reasonably subject to two different interpretations." *Holmstrom v. Mutual Benefit Health & Accident Assoc.*, 139 Mont. 426, 364 P.2d 1065, 1066 (1961). Because an exclusion to an insurance contract is at issue, the language of the exclusion must be examined from the viewpoint of a consumer of average intelligent, not trained in the law or in the insurance business, and must be strictly construed against Safeco, the insurer. *See*, n. 5, *supra.*

Safeco obviously has taken the position the pollution exclusion in its policy is unambiguous and operates to exclude from coverage under the policy, the Grindheims' claim of nuisance resulting from any "odor" emanating from the "raw sewage" discharged by the Deerfield Colony into the coulee. The court finds it difficult to conceive of a construction

---

without constructing lagoons or proper sewage disposal facilities with the result that organic materials, odors and substances are carried by *water downhill and onto the Grindheim property.*

Over the years the Grindheims have complained about the trespass and nuisance which has occurred as a result of the negligence of the Colony, which negligence has caused very substantial damage and distress to the Grindheim family.

Finally, the Grindheims instituted an action for damages against the Colony in the Montana Tenth Judicial District of Fergus County, Mon-

tana, on June 4, 1992, for damages caused by the trespass, nuisance and negligence of the Colony in permitting manure and organic matter created by it to run down, onto, over and into the property owned by the Grindheims.

\* \* \* \* \* \*

In face of the facts of nuisance and trespass by the Colony against the Grindheims, it was obvious the Colony was liable to the Grindheims for negligence, trespass and nuisance damages to their persons and property by negligently allowing organic matter originating from its premises to run onto property of the Grindheims.

of the pollution exclusion that could be any broader than that advocated by Safeco. Likewise, Safeco chose to narrowly construe, from its perspective, the terms of the exception to the pollution exclusion. Safeco, however, is not entitled to this luxury in assessing its obligation to defend the Deerfield Colony in the Grindheim action.

■ When comparing the allegations of liability advanced in the complaint with the language of the policy to determine whether the obligation to defend was "triggered", the court must liberally construe the allegations in the complaint, resolving all doubts about the meaning of the allegations in favor of finding the obligation to defend was "triggered". *See, Portal Pipe Line Co., supra,* 845 P.2d at 749. *See also, Ruder & Finn Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 861, 422 N.E.2d 518, 521 (1981) ("a policy protects against poorly or incompletely pleaded cases as well as those artfully drafted.... If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false, or baseless the suit may be."); *Petr–All Petroleum Corp. v. Fireman's Ins. Co.,* 188 A.D.2d 139, 593 N.Y.S.2d 693 (4th Department 1993) ("It is now settled law that an insurer may not use an unartfully pleaded complaint as a shield to liability and a court in deciding whether an insurer has a duty to defend...."). These rules of construction are logical corollaries of the more general rules requiring strict construction of exclusions, and construction of ambiguous terms in favor of the insured.

■ The "limited" pollution exclusion in the policies issued by Safeco to the Deerfield Colony and, in effect, from 1985 through October 15, 1990, provided at subsection (a)(8) that "Coverage G ... [does] not apply to: (8) injury or damage caused by or resulting from. a **Pollution Incident**". The term "injury", unlike the term "bodily injury", is not specifically defined in the policies.[14] Because the term "injury", as utilized in subsection (a)(8) of the pollution exclusion, cannot be equated with the term "bodily injury" as utilized in the liability provisions of the policy, the pollution exclusion cannot be viewed as applicable to the "personal injury" coverage provided in the liability coverage provisions (Coverage G) of the policy.[15] At the

14. A specific definition for "bodily injury" is set forth in the definitional section of the policy in the following terms:

 "**Bodily injury**" means:
 1. bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom,
 2. personal injury arising out of one or more of the following offenses:
 a. false arrest, detention or imprisonment, or malicious prosecution;
 b. libel, slander or defamation of character; or
 c. invasion of privacy, wrongful eviction or wrongful entry.

15. There exists a significant number of decisions from other jurisdictions recognizing that "personal injury" coverage, similar to that contained in the Safeco policy under scrutiny, applies to pollution or contamination damage which interferes with the private occupancy or quiet enjoyment of real property (*e.g.,* nuisance or trespass claims). *See, e.g., Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1044 (7th Cir.1992) (spill of oil containing polychlorinated biphenyls (PCBs) constitutes personal injury); *Titan Holdings Syndicate v. City of Keene,* 898 F.2d 265, 273–74 (1st Cir.1990) (city's sewage treatment plant's noxious odors, noise and light constitutes invasion of "right of private occupancy"); *Hirschberg v. Lumbermens Mutual Casualty Co.,* 798 F.Supp. 600, 604 (N.D.Cal. 1992) (coverage for personal injury arising out of "other invasion of right of private occupancy" created potential for coverage for nuisance and trespass claims arising from contamination of property with hazardous waste).

The court does not intend to suggest the various rationales expressed by those courts that have been called upon to construe the relationship between a pollution exclusion and the "personal injury" coverage provisions of particular liability insurance policies, are in accord, since other courts have not adopted the rationale expressed in the cases referenced in the preceding paragraph. *See, e.g., Harrow Products, Inc. v. Liberty Mutual Ins. Co.,* 64 F.3d 1015 (6th Cir.1995); *A.J. Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203 (5th Cir.1991). However, review of those decisions in which courts have construed substantially similar pollution exclusion clauses provide guidance in the development of the proper analytical framework for construction of a particular pollution exclusion. The construction of the insurance policy in the present case and, obviously, the pollution exclusion contained in that policy, is an issue of contract law, resolved in accordance with the pertinent law of the State of Montana. Because there exists no controlling precedent from the Montana Supreme Court

very least, the term "injury", as used in the pollution exclusion, when read in conjunction with the term "invasion of privacy"[16], is ambiguous and, therefore, must be resolved in favor of the insured and against the insurer. *St. Paul Fire & Marine Ins. Co. v. Thompson, supra,* 433 P.2d at 798; *Aetna Ins. Co. v. Cameron, supra,* 633 P.2d at 1214; *see also, Hirschberg, supra,* 798 F.Supp. at 604.[17] This conclusion is consistent with recognition of the fact that under Montana law a nuisance is defined as "anything which is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Mont. Code Ann. § 27-30-101 (1993); *see also, Iverson v. Dilno,* 44 Mont. 270, 273-74; 119 P. 719 (1911); *Hirschberg v. Lumbermens Mutual Casualty, supra,* 798 F.Supp. at 604. Under the circumstances, the complaint in the Grindheim action, properly construed in favor of coverage, raised the possibility of coverage, notwithstanding the pollution ex-

clusion, and operated to "trigger" Safeco's duty to defend the Deerfield Colony.

▪ The second aspect of the ambiguity argument presented by the Grindheims and the Deerfield Colony focuses primarily upon the meaning to be attributed to the term "occurs suddenly" as utilized in the exception to the "pollution exclusion". The issue has been spawned, at least in part, because the term "suddenly" is not defined in the policy, particularly in relation to the term "occurrence," as used in the liability coverage provisions of the policy. The Grindheims and the Deerfield Colony also argue, in a general sense, that the term "pollution incident", as defined in the policy, is ambiguous with respect to the odor from "sewage" complained of by the Grindheims. In sum, the Grindheims and the Deerfield Colony ask the court to interpret the exception to the pollution exclusion to simply be a restatement of the "occurrence" definition and hold, in effect, that the exclusion as a whole only excludes coverage for damages which are either expected or intended by the insured.[18]

---

upon the precise issue presented, this court, utilizing all sources of Montana law, must attempt to discern the result the Montana Supreme Court would reach if it were presented with the issue.

**16.** The term "invasion of privacy" as utilized in the personal injury coverage provision of the policy is not defined. This lack of definition further magnifies the ambiguity created by the use of the term "injury" in the pollution exclusion. In this regard, it is imperative to note that those courts which have criticized the rationale of the Seventh Circuit in *Pipefitters Welfare Educational Fund,* and the First Circuit in *Titan Holdings Syndicate, see,* n. 15, *supra,* predicate their criticism upon the fact the opinions in those cases have not "addressed the effect of a *clear and unambiguous* pollution exclusion elsewhere in the policy on the personal injury endorsement." *Harrow Products, Inc., supra,* 64 F.3d at 1024. In the present case, however, the pollution exclusion under scrutiny is not clear and unambiguous.

**17.** Noteworthy is the fact the policy states, within the provision defining bodily injury, that the exclusions to the liability coverage provisions (including the pollution exclusion) do not apply to personal injury coverage.

**18.** For purposes of background the court notes this, so-called "unexpected/unintended" view, was adopted by a majority of the courts called upon to interpret what is generally referred to as the "standard form limited pollution exclusion", *see,* INSURANCE SERVICES OFFICE ("ISO")

Form GL00-02 (Edition 01-73); the pollution exclusion found in most "occurrence" based liability policies issued in the late 1970's and early 1980's. *See,* BARRY R. OSTRAGER AND THOMAS R. NEWMAN, INSURANCE COVERAGE DISPUTES (6th ed.) § 10.02. This exclusion provided as follows:

This insurance does not apply ... (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon the land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental* (emphasis added).

Numerous courts construing the standard form limited pollution exclusion have adopted the "unexpected/unintended" view, and found that releases of pollutants that an insured did not expect or intend are "sudden and accidental" within in the meaning of the exception. *See, e.g., Queen City Farms v. Central National Ins. Co.,* 126 Wash.2d 50, 882 P.2d 703, 720 (1994); *Outboard Marine Corp. v. Liberty Mutual Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992); *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1092 (Colo.1991); *see also, Joy Technologies Inc. v. Liberty Mutual Ins. Co.,* 187 W.Va. 742, 421 S.E.2d 493 (1992). These courts, recognizing the word "sudden" is commonly defined both in terms of the "unexpected" and in terms of connotating a temporal idea of abrupt

The term "suddenly" as used in the pollution exclusion is properly construed as including a "temporal" element. The exception to the pollution exclusion provides that the pollution exclusion will not apply with respect to claimed injury or damage if the following three conditions are satisfied:

(1) the injury or damage occurs "suddenly during the policy";

(2) the injury or damage is "unknowingly caused"; and

(3) the injury or damage would not have been "expected or intended by a reasonably prudent person in the [insured's] position."

Because the term "suddenly", as a condition to application of the exception is separated spatially from the terms "expected or intended", and because the third condition required is defined by using the term "unexpected", the exception does not suffer from the ambiguity found in the exclusion to those pollution clauses that utilized the terminology

"sudden and accidental". *See,* n. 18, *supra.* This construction of the exclusion is both reasonable and consistent with the principle of contract construction recognizing that, where "reasonably practicable, every part of a contract must be given effect." Mont.Code Ann. § 28–3–202 (1993); *Universal Underwriters Ins. Co. v. State Farm Automobile Ins. Co.,* 166 Mont. 128, 531 P.2d 668, 673 (1975).[19]

Notwithstanding the court's conclusion that the term "suddenly" is properly afforded a temporal definition, there remains the issue of whether the term was intended to refer to the *commencement* of the "injury or damage" or its *duration. See, e.g., Waste Management of Carolinas v. Peerless Ins. Co., supra* (seepage which continued for a six-year duration did not constitute "sudden and accidental" pollution); *Goodman v. Aetna Cas. & Surety Co.,* 412 Mass. 807, 593 N.E.2d 233 (1992) ("crucial element" in determining the "suddenness" of a polluting event is the commencement of the release).[20] Even if the

or instantaneous, have concluded the term is ambiguous in the context of the pollution exclusion, and refused to define "sudden" with reference to a temporal element.

Many other courts, however, have adopted a "temporal" definition of "sudden". *See, e.g., Upjohn Co. v. New Hampshire Ins. Co.,* 438 Mich. 197, 476 N.W.2d 392 (1991); *Lumbermens Mutual Cas. Co. v. Belleville Indus. Inc.,* 407 Mass. 675, 555 N.E.2d 568 (1990); *Waste Management of Carolinas v. Peerless Ins. Co.,* 315 N.C. 688, 340 S.E.2d 374 (No.Car.1986). Although these courts agree that the term "sudden and accidental" should be construed to include a temporal element, agreement is lacking over whether focus is properly brought to bear upon the duration of the polluting event, *see, e.g., Waste Management of Carolinas, supra,* whereupon the commencement of the pollution. *See, e.g., Goodman v. Aetna Cas. & Surety Co.,* 412 Mass. 807, 593 N.E.2d 233 (1992).

Although review of the innumerable cases in which the concept of "sudden", as used in the standard form limited pollution exclusion are instructive, they may not be relied upon to resolve the issue in the present case, because the "exception" to the pollution exclusion clause at issue in the present case uses the term "suddenly" in conjunction with the terms "expected or intended". Consequently, the term "suddenly" as used in the pollution exclusion under scrutiny must be given a temporal definition.

The pollution clause in the Safeco policy also differs from the standard form limited pollution exclusion in that the "exception" to the exclusion states that the "injury or damage" must occur

"suddenly" during the policy. The standard form limited pollution exclusion, on the other hand, refers to the "discharge, dispersal, release or escape" as being "sudden and accidental".

**19.** A number of those courts which have refused to construe the term "sudden", as utilized in the standard form limited pollution exclusion, as embodying a "temporal" element, have relied upon the written history attendant to the drafting and marketing of the exclusion, and particularly statements made by representatives of the insurance industry to the insurance regulatory bodies of the several states. *See, e.g., Queen City Farms v. Central National Ins. Co., supra,* 882 P.2d at 720–723; *Joy Technologies, Inc. v. Liberty Mutual Ins. Co.,* 187 W.Va. 742, 421 S.E.2d 493 (1992). Because no party to this action has predicated their position upon this "history", the court's decision should not be taken as an intimation, on the part of this court, as to the propriety of utilizing this "history" in resolving an ambiguity extant in any version of the "limited" pollution exclusion.

**20.** In *Goodman,* the Massachusetts Supreme Court recognized that "until all the circumstances of the release [of a pollutant] are fully developed, no adequate determination can be made as to whether the 'sudden and accidental' exception is applicable." 593 N.E.2d at 236. In the specific context of groundwater contamination, courts have reached differing views regarding what event constitutes a "release". In *Broderick Inv. Co. v. Hartford Accident & Indemnity*

pollution exclusion, and the "exception" thereto, is read in isolation of the term "occurrence," as utilized in the liability coverage provisions of the policy, the exclusion is arguably ambiguous in relation to both the Grindheims' direct allegations of water and land contamination, and their allegations of nuisance in the form of "odors". When the exclusion is read in conjunction with the term "occurrence", there does exist, as the Grindheims and the Deerfield Colony accurately note, an ambiguity relative to whether the commencement of the Grindheims' injury or damage must have been "sudden", or whether the duration of their injury and damage must have been "sudden". Resolving the ambiguity in favor of the insured, inquiry must be brought to bear upon the commencement of the injury or damage of which the Grindheims complained. Because the inquiry regarding the commencement of the injury or damage allegedly sustained by the Grindheims was one factual in nature, Safeco was not at liberty to resolve that issue in its favor, when assessing whether or not it had a duty to defend the Deerfield Colony.

■ Safeco had a duty, pursuant to the terms of the ranch and farm liability policies it issued to the Deerfield Colony, and which were in force, from October 15, 1985, to October 15, 1990, to defend the Deerfield Colony in the Grindheim action. Safeco breached that duty, when, in its narrow interpretation of the terms of the referenced policies as applied to the factual assertions advanced by the complaint in the Grindheim action, it failed to accept the Deerfield Colony's tender of the defense to the Grindheim

action. Consequently, Safeco is liable to the Deerfield Colony, the insured, for all damages that entity sustained as a result of Safeco's breach. *Independent Milk & Cream Co. v. Aetna Life Ins. Co., supra,* 68 Mont. at 158–59, 216 P. 1109.[21]

## V.

■ The motion for partial summary judgment presented by the Deerfield Colony seeks not only a declaration that Safeco breached its duty to defend the Colony in the Grindheim action and is, accordingly, liable for the damages sustained by the Colony, but also a declaration that Safeco is liable for costs incurred by the Deerfield Colony in taking remedial measures to prevent future damage to adjoining landowners. The Deerfield Colony premises this claim upon its conclusion that any remedial measures undertaken to prevent future damage or injury fall within the scope of "property damage" as defined under the liability coverage provisions of the policy. As best as can be ascertained from the pleadings submitted by the parties with respect to the Deerfield Colony's claim for "cleanup costs" and "remedial measures", it appears the Colony is seeking recovery for monies necessary to construct an effective sewage disposal system. Safeco suggests this particular aspect of the Deerfield Colony's motion is, at the very least, not ripe for disposition.

The argument presented by the Deerfield Colony in support of its claim of entitlement to recoup "clean-up" costs and the costs it will incur in taking remedial measures to ensure no future damage to adjoining land-

*Co.,* 954 F.2d 601 (10th Cir.), opinion amended on rehearing, *cert. denied,* 506 U.S. 865, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992), the court held that the "release" was neither sudden nor accidental when the insured intentionally placed waste into unlined soil. In *Krawczewski v. Western Casualty & Surety Co.,* 506 N.W.2d 656 (Minn.Crt.App.1993), however, the court found the "release" to be the entry of contaminants into the ground water, not the initial escape of contaminants from barrels placed in the landfill.

**21.** The arguments advanced by the Grindheims and the Deerfield Colony focus primarily upon

the policies in existence from October 15, 1985, to October 15, 1990. The Grindheims and the Deerfield Colony make reference to the policies issued by Safeco to the Deerfield Colony subsequent to October 15, 1990, for the purpose of emphasizing the changes unilaterally effected by Safeco to the policies, and particularly the pollution exclusion, *see,* n. 1 *supra,* are indicative of the ambiguity which Safeco realized existed in its "limited" pollution exclusion. Having determined Safeco had a duty to defend the Deerfield Colony in the Grindheim action under the older policies, the court need not endeavor to construe the "new" policy.

owners of the type underlying the Grindheim action, can be characterized, at best, as rudimentary. The court finds it is impossible, as Safeco suggests, to address this particular claim on an informed basis at this juncture. Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the motion for partial summary judgment presented by Lyle and Barbara Grindheim, plaintiffs in cause No. 92–157–GF, and the motion for partial summary judgment presented by the Hutterian Brethren of Deerfield, plaintiff in cause No. 92–180–GF, are GRANTED to the extent the court holds that Safeco Insurance Company, the defendant in both referenced causes of action, breached its obligation to defend the Hutterian Brethren of Deerfield with respect to that civil action prosecuted in the District Court for the Tenth Judicial District, Fergus County, Montana, and denominated *Lyle and Barbara Grindheim v. Deerfield Hutterite Colony,* cause No. DV–92–74. The referenced motions for partial summary judgment are, in all other respects, DENIED.

IT IS FURTHER ORDERED that the motions for summary judgment presented by Safeco Insurance Company of America, as defendant in both of the above-entitled actions be, and the same hereby are, DENIED.