No. 97-260

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


JAROLD R. WOOD and DARA WOOD,

Plaintiffs, Appellants, and Cross-Respondents,

v.

OLD TRAPPER TAXI; JAMES HAGEN; JAMES KOZORA;
KTCM and its successor television stations; UNR INDUSTRIES,
INC., a Delaware corporation; and ROHN, a division of
UNR INDUSTRIES,

Defendants, Respondents, and Cross-Appellants.



APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

John C. Doubek; Small, Hatch, Doubek & Pyfer;
Helena, Montana

For Respondents:

L. D. Nybo; Conklin, Nybo, LeVeque & Murphy, P.C.;
Great Falls, Montana
(for Respondents UNR Industries and ROHN)


Submitted on Briefs: September 17, 1997

Decided:   November 25, 1997
Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

Jarold R. Wood and his wife, Dara Wood, filed suit in the First Judicial District Court, Lewis and Clark County, to recover damages as a result of injuries sustained by Jarold when a radio tower he was erecting collapsed. The Woods sued the above-named defendants and specifically sought damages against the manufacturers of the tower, UNR Industries, Inc., and Rohn, a division of UNR Industries, under product liability theories alleging a manufacturing defect and failure to warn. Defendants Old Trapper Taxi and James Hagen settled in full with the plaintiffs. The District Court granted summary judgment in favor of defendant James Kozora, which has not been appealed by the Woods. Defendant KTCM was named as a party but was never served. The District Court also granted summary judgment in favor of UNR and Rohn and against the Woods which is the subject of this appeal. Defendants UNR and Rohn have cross-appealed from the District Court's denial of their motion to dismiss. We reverse in part and affirm in part.

The dispositive issues on appeal are:

1. Did the District Court err in granting summary judgment in favor of UNR and Rohn and against the Woods on their manufacturing defect claim?

2. Did the District Court err in granting summary judgment in favor of UNR and Rohn and against the Woods on their failure to warn claim?

3. Did the District Court err in denying the motion to dismiss filed by UNR and Rohn?

FACTUAL BACKGROUND

Prior to 1965, UNR Industries, Inc., and Rohn, a division of UNR Industries (hereinafter the defendants) manufactured and sold a Model PT-64 radio tower. This tower was eventually sold in a used condition to James Kozora in Ohio, sometime between 1970 and 1972. The chain of ownership prior to Kozora is unknown. Kozora erected the tower in Sagamore Hills Township, Ohio, and apparently used it in connection with his ham radio. In 1975, Kozora disassembled the tower. In 1976, he moved from Ohio to Helena, Montana, and transported the tower to Helena in a U-Haul truck/ trailer.

Upon moving to Helena, Kozora stored the tower in sections at his residence and never again assembled or used the tower. However, sometime after his arrival in Helena, Kozora sold the tower, along with guy wires, to James Hagen for $125. Hagen, the owner of defendant Old Trapper Taxi, purchased the tower with the intent to use it as part of a communications system for his business. Hagen took delivery of the tower and guy wires and stored the equipment inside his offices.

In the summer of 1990, Hagen hired plaintiff Jarold Wood, the owner of a Helena communications business, to erect the tower. On September 4, 1990, while attempting to erect the tower, Jarold was injured when he fell approximately forty-five feet

due to
the collapse of the tower.

The Woods filed suit in the First Judicial District Court, Lewis and Clark County,
on March 26, 1991.  In their second amended complaint filed on September 3, 1993, they
claim that the tower collapsed due to the failure of one of the legs which they allege had
been altered and reinforced with a welded section of plumbing pipe and then painted
over.  Significantly, the Woods assert that the defendants performed this repair at their
facilities prior to selling the tower.  In addition, the Woods claim that the defendants
were negligent and strictly liable for failing to warn or advise potential users that they
should never attempt to erect the tower after it has been repaired or modified.  The
Woods further claim that the defendants were liable for failing to warn potential users that
the tower should not be erected without the use of guy wires.

The defendants admit that the tower collapsed due to a failure of one of the legs.
However, the defendants vigorously assert that the tower was not altered or repaired at
their facility and, therefore, they are not responsible.

The critical physical evidence, namely, the failed leg section of the tower is
missing.  However, the remaining parts of the tower, as well as a videotape of the tower
before the collapse, were available to both parties and examined by their respective experts.

On February 7, 1996, the defendants moved for summary judgment on the Woods'
product liability claims.  In their supporting brief, the defendants also moved to dismiss
the case because the failed leg section was missing and, thus, they argue they could not
adequately defend themselves without this key piece of evidence.

On May 15, 1996, the District Court granted summary judgment in favor of the
defendants on the manufacturing defect claim.  The court reasoned that since the key
piece of evidence was not available and the expert testimony was conflicting on the
crucial question of whether or when a defect existed, the Woods were unable to prove
that the tower was defective when it left the defendants' control.  The District Court
denied the defendants' request for summary judgment on the failure to warn claim,
however, concluding that there were questions of fact on this issue to submit to the jury.
Although the defendants' motion to dismiss was not directly addressed in the District
Court's memorandum and order granting summary judgment, it is clear from a review
of the record that this motion was denied.

Both sides were unsatisfied with the District Court's ruling.  On October 11, 1996,
the Woods filed their motion to alter or amend the District Court's May 15, 1996,
summary judgment order, arguing that the manufacturing defect claim should also be
submitted to the jury.  Shortly thereafter, the defendants countered by filing a

motion to
alter or amend the District Court's order on the failure to warn claim.  On January 14,
1997, the District Court denied both parties' motions to alter or amend judgment.

On February 18, 1997, the parties presented additional oral argument to the District Court on the failure to warn claim.  On March 13, 1997, the defendants filed a
motion for reconsideration, asking the District Court to reconsider its January 14, 1997,
memorandum and order on the failure to warn claim in light of the additional argument.
On March 26, 1997, the District Court issued an order granting summary judgment in favor of the defendants on all claims.

The Woods appeal from the District Court's orders granting summary judgment to UNR and Rohn.  UNR and Rohn cross-appeal the failure of the District Court to dismiss the Woods' claims due to missing evidence, the repaired section of the tower.

## STANDARD OF REVIEW

This Court reviews an order granting summary judgment de novo by utilizing the same criteria used by a district court initially under Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903; In re Estate of Lien
(1995), 270 Mont. 295, 298, 892 P.2d 530, 532.  Furthermore, on review, all reasonable
inferences that might be drawn from the offered evidence should be drawn in favor of the
party opposing summary judgment.  Payne Realty & Housing, Inc. v. First Sec. Bank of Livingston (1992), 256 Mont. 19, 25, 844 P.2d 90, 93; Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511.

Summary judgment is a remedy which should not be granted when there is any genuine issue of material fact; the procedure should never be substituted for trial if a
material factual controversy exists.  Rule 56(c), M.R.Civ.P.; Payne Realty, 256 Mont. at 24, 844 P.2d  at 93; Cereck, 195 Mont. at 411, 637 P.2d at 511.

The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues.  D'Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924.  This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact.  Ulrigg v. Jones (1995), 274 Mont. 215,
218, 907 P.2d 937, 940.  The party opposing summary judgment must present material and substantial evidence, rather than merely conclusory or speculative statements, to raise
a genuine issue of material fact.  B.M. by Berger v. State (1985), 215 Mont. 175, 179,
698 P.2d 399, 401.

## ISSUE 1

Did the District Court err in granting summary judgment in favor of UNR and Rohn and against the Woods on their manufacturing defect claim?

The Woods argue that the District Court erred in granting summary judgment to UNR Industries and Rohn on the manufacturing defect claim.  The Woods contend that there are genuine issues of material fact regarding the important question of whether the

tower was defective when it left the defendants' facilities.

The defendants counter that the Woods are unable to prove that the tower was defective when it left their facilities; therefore, summary judgment should be granted as
a matter of law.

After review of the record in this case, we conclude that the District Court erroneously took it upon itself to resolve disputed issues of material fact. Although the
defendants argue that the documents and affidavits submitted do not create genuine issues
of material fact, we conclude that the documents were sufficient to meet the Woods' burden in opposing summary judgment.

The heart of the Woods' claim is strict liability in tort. A person who sells a product in a defective condition unreasonably dangerous to a user or consumer is liable
for the physical harm caused by the defective product. Restatement (Second) of Torts õ
402A (1965); õ 27-1-719, MCA. This Court adopted õ 402A in the case of Brandenburger v. Toyota Motor Sales, U.S.A., Inc. (1973), 162 Mont. 506, 513 P.2d 268. In a products liability action, in order to establish a prima facie case in strict
liability, a plaintiff must prove the following elements:

(1) The product was in a defective condition, "unreasonably" dangerous to the user or consumer;

(2) The defect caused the accident and injuries complained of; and

(3) The defect is traceable to the defendant.

Brown v. North American Mfg. Co. (1978), 176 Mont. 98, 105, 576 P.2d 711, 717.

Under a manufacturing defect theory, the central question is whether the product is flawed due to improper construction. In Rix v. General Motors Corp. (1986), 222 Mont. 318,  723 P.2d 195, we defined manufacturing defects as
imperfections that inevitably occur in a typically small percentage of products of a given design as a result of the fallibility of the manufacturing process. A defectively manufactured product does not conform in some significant aspect to the intended design, nor does it conform to the great majority of products manufactured in accordance with that design.

Rix, 222 Mont. at 326, 723 P.2d at 200 (quoting James A. Henderson, Jr., Judicial Review of Manufacturers' Conscious Design Choices: The Limits of Adjudication, 73 Co. L. Rev. 1531, 1543 (1973)).

The Woods assert, and the defendants do not deny, that the tower collapsed due to the failure of one of the legs which, at some unknown point since its original manufacture, had been reinforced with a welded section of plumbing pipe and then painted over. The Woods assert that the defendants performed the repair at their facilities
prior to selling the tower.

The Woods presented the affidavit of their expert witness, Ronald Glovan, in support of their theory. Ronald Glovan's affidavit filed on March 4, 1996, sets forth why
he believes that the tower was defective before leaving the control of the defendants:

First it is my opinion that the manufacturer performed the repair.

This is based upon the nature of the repair as well as the clear evidence in the other two legs of the involved segment which show no deformation. Further, the repair was most likely a repair of a welding burn-through that was a direct result of the manufacturing process, which I have concluded was defective.

. . . .

Clearly I stated that the repair to the leg was not caused by a previous collapse of the tower nor by any excessive bending loads that might have been placed on it during erection (or the disassembly thereof). I further stated that the video shows that the two remaining legs had not been given similar repairs and had not been substantially deformed as would have happened if the tower had suffered a previous collapse. Clearly that points to the manufacturer for having repaired the tower.

In their motion for summary judgment, the defendants argue that there was no proof that they had repaired the tower because the pipe was not galvanized, which was a step in the manufacturing process, and because the repair was painted over and painting is not a part of the manufacturing process.

The Woods addressed these arguments in Jarold's affidavit. Jarold stated:

When I was asked by Mr. James Hagen, owner of Old Trapper Taxi, to erect the involved tower for him I very carefully laid each of the tower sections out on the ground before I began the erection process. I very carefully inspected it. I did not see any weld which was different from any other weld. I did not see any place on any of the tower sections where there had been spray paint or some other kind of coating which was in any way different in appearance from the rest of the tower. The entire tower, all of the sections and the legs, appeared to have been galvanized. I also did not detect any rusty spots on any of the tower sections.

Sometime after the tower collapsed I carefully examined the same. Again I did not see any spray paint anywhere on the tower, or [on] any of its legs, or on the piece of pipe that had been inserted into one of the legs. The threads of the pipe appeared galvanized and not painted over.

Although the District Court considered the affidavit, it concluded that the Woods' evidence suggested only a weak possibility that the key section of the tower was shipped from UNR Industries' facility more than three decades ago in a defective condition. The District Court explained that the parties' respective experts "differ about the condition of the tower when it left Defendants' facility and whether a manufacturing defect existed at the time the tower was in Defendants' possession." The District Court further stated that "[a] jury should not be asked to evaluate the credibility of experts concerning the defectiveness of a radio tower when it left the hands of Defendants, which the experts have neither seen nor can see, and which was manufactured more than 30 years ago."

Therefore, the District Court granted summary judgment in favor of the defendants on the Woods' manufacturing defect claim.

Summary judgment is never to be a substitute for trial if there is an issue of material fact. Payne Realty, 256 Mont. at 24, 844 P.2d at 93. All reasonable inferences that may be drawn from the offered proof must be resolved in favor of the party opposing summary judgment. If there is any doubt regarding appropriateness of a summary judgment motion, it should be denied. Payne Realty, 256 Mont. at 24, 844 P.2d at 93.

It is apparent that the District Court was genuinely concerned that the absence of the failed piece, combined with conflicting expert testimony, rendered this case virtually impossible for a jury to decipher. We should never underestimate, however, the collective wisdom of the American jury to sort out complex problems such as this. Claims or defenses which are good "on paper" often evaporate when subjected to the time-honored test of cross-examination by skilled trial counsel. Juries have an uncanny ability to evaluate the credibility of a witness, especially an expert. Problems presented in a case such as this, namely conflicting expert testimony and missing evidence, are best solved by juries.

Considering the evidence in a light most favorable to the Woods, as we must, we conclude that a jury could reasonably find that the tower was in a defective condition before it left the defendants' facilities. Although the District Court concluded that the Woods' evidence suggests a "weak possibility" of a manufacturing defect, we conclude that, based on the affidavits in the record, reasonable minds could differ in this regard. Furthermore, on review, all reasonable inferences should be drawn in favor of the party opposing summary judgment. As long as there is a material issue of fact in dispute, as exists under the circumstances here, summary judgment is not appropriate.

In sum, we conclude that the evidence submitted by the Woods in opposition to the defendants' motion for summary judgment adequately discharged their burden of demonstrating genuine issues of material fact. We do not suggest that the disputed facts discussed herein are the only disputed facts that remain to be determined in this case. However, the facts discussed are indicative of the presence of disputed issues of fact that preclude the resolution of the Woods' manufacturing defect claim by summary judgment.

We hold that the District Court erred in granting summary judgment for the defendants on the Woods' claim based on manufacturing defect.

ISSUE 2

Did the District Court err in granting summary judgment in favor of UNR and Rohn and against the Woods on their failure to warn claim?

The Woods contend that the District Court erred in granting summary judgment to the defendants on the failure to warn theory. The Woods argue that the defendants

were negligent and strictly liable for failing to warn potential users of the tower that they should not attempt to repair or modify the tower and then attempt to erect it. The Woods also contend that the tower was defective because it was sold without guy wires and without a warning that guy wires should be used when erecting the tower.

Defendants maintain that the Woods simply cannot establish that any failure to warn on their part caused the accident and injuries. They reiterate that the tower collapsed due to a defective weld which was applied in a repair which they specifically deny making. In the alternative, they argue that even if they had provided the warnings or instructions urged by the Woods, Jarold would not have heeded them.

In orders filed May 15, 1996, and January 14, 1997, the District Court denied the defendants' motions for summary judgment on the failure to warn claim. On March 26, 1997, after hearing oral argument on the issue, the District Court revisited the matter and granted summary judgment in favor of the defendants on all claims. In its order granting the summary judgment, however, the District Court provided no basis or rationale for its reversal on the failure to warn issue.

Montana law recognizes failure to warn as a distinct cause of action under the theory of strict products liability. We have previously held that "a failure to warn of an injury causing risk associated with the use of a technically pure and fit product can render such product unreasonably dangerous." Brown, 176 Mont. at 110, 576 P.2d at 718. As with a manufacturing defect, a strict liability claim for failure to warn requires proof that the product was in a defective condition, "unreasonably" dangerous to the user or consumer, that the defect caused the accident and injuries complained of, and that the defect is traceable to the defendant. Riley v. American Honda Motor Co. (1993), 259 Mont. 128, 132, 856 P.2d 196, 198; Brown, 176 Mont at 110, 576 P.2d at 718.

Under the first element, the Woods must prove that the tower was in a defective condition, unreasonably dangerous to the user or consumer. As stated above, the failure to warn of an injury-causing risk associated with the use of a technically pure and fit product can render such product unreasonably dangerous. The product is automatically defective if it is unreasonably dangerous and a warning is required but not given. Krueger v. General Motors Corp. (1989), 240 Mont. 266, 278, 783 P.2d 1340, 1348. A product may be defective if purchasers and likely users have been misinformed or inadequately informed about either the risks or dangers involved in the use of the product or how to avoid or minimize the harmful consequences from such risks. Streich v. Hilton-Davis (1984), 214 Mont. 44, 54, 692 P.2d 440, 445.

The Woods presented affidavit testimony to the District Court in support of their theory that the tower was defective and unreasonably dangerous because it lacked an

effective warning.  Ronald Glovan's affidavit filed on February 16, 1996, related to the potential dangerous propensities of the tower and included the following statements:

> I have also pointed out in my report that the tower was design defective because it was not guyed.  The company should have provided by literature, warning or actual guying assembly information to the buyer to use guy wires when erecting the tower.  The Company knows that this is true in light of its literature promoting the use of guying assembly.

Furthermore, in supplemental answers to interrogatories, the Woods informed defendants that Dale Bussman, one of their expert witnesses will testify that the tower was defective in that, considering the height of the tower, guy wires should have been used.  Further, he will testify that the tower was defective because it should have been sold with a guying assembly.  He will testify that the tower was defective because there should have been included a warning regarding the use or lack of the use of guy wire, guy wire assembly and also because such tower should not be repaired or re-erected.  Mr. Bussman will testify that the literature which was likely used in connection with the sale of the particular tower, or at least which likely accompanied the tower at the time of the sale of the tower, included language . . . which . . . conveyed a false sense of security and could easily lead the buyer to believe that repairs could be made to the tower and that the tower could thereafter be used.  Using the terms 'wind loading at a minimum' does the same thing, that is, provide a false sense of security to the purchaser/user of the tower.

The question before the District Court was whether genuine issues of material fact existed regarding the potential danger of erecting the tower without an appropriate warning  and failing to sell the tower without a guy wire assembly, as well as failing to advise the user that the tower should not be erected without guy wires.  In light of the affidavit testimony presented by the Woods, we conclude that the District Court erroneously resolved these issues in favor of the manufacturers.

Under the second element, a showing of proximate cause is necessary for recovery in strict liability.  Brown, 176 Mont. at 110, 576 P.2d at 719.  This Court has adopted a flexible standard of proof on causation which may be met by circumstantial, as well as direct, evidence. Brown, 176 Mont. at 106, 576 P.2d at 716.  While causation is ordinarily a question of fact in a failure to warn claim, it may be determined as a matter of law where reasonable minds can reach only one conclusion regarding causation.  See Broham v. State (1988), 230 Mont. 198, 202-03, 749 P.2d 67, 70.  Causation for a failure to warn claim can be satisfied by evidence that a warning would have altered the plaintiff's use of a product or prompted the plaintiff to take precautions to avoid the injury.  Riley, 259 Mont. at 133, 856 P.2d at 199.

In Jarold Wood's affidavit, he stated:

> This tower, I had been told by Rohn literature at the time I erected

it, was sold as a free standing tower.  Accordingly, I did not use guy wires.
Further, there was no guy wire assembly which was part of this tower.
Knowing what I know now I would never erect such a tower without using
guy wires or having a guying assembly in place on the tower.  This tower
would not have fallen over if a guying assembly had been a part of this
tower.  If it had been a part of the tower I know I would have used it.

At a minimum, pursuant to Riley, this evidence raises a genuine issue of material
fact regarding causation.

Moreover, the Woods present other evidence which raises a genuine issue of
material fact regarding causation.  First, Glovan's affidavit filed on February 16, 1997,
stated, "It is my opinion that had this tower been guyed the accident would not have
occurred."  Second, in an answer to interrogatories, the Woods stated that Bussman "will
further testify that if guy wires had been utilized in the erection of the involved tower that
the catastrophic event would not have occurred."

The defendants acknowledge this testimony, but point out that Jarold Wood's
affidavit contradicts earlier testimony he gave in a deposition taken on October 26, 1995.
In that deposition, Jarold testified that he did not need any instructions before erecting the
tower and that "[g]uy wires on this type of tower were not needed below 48 feet."  The
defendants contend that Jarold changed his testimony to defeat the motion for summary
judgment.  The District Court ruled that any inconsistency between Jarold's affidavit and
earlier deposition  testimony was not clearly contradictory or motivated to defeat
defendants' motion for summary judgment.

In Stott v. Fox (1990), 246 Mont. 301, 309, 805 P.2d 1305, 1309-10 (quoting
Wilson v. Westinghouse (8th Cir. 1988), 838 F.2d 286, 289), this Court stated that:

While the district courts must exercise extreme care not to take
genuine issues of fact away from juries, '[a] party should not be allowed to
create issues of credibility by contradicting his earlier testimony' . . .
Ambiguities and even conflicts in a deponent's testimony are generally
matters for the jury to sort out, but a district court may grant summary
where a party's sudden and unexplained revision of testimony creates an
issue of fact where none existed before.  Otherwise, any party could head
off a summary judgment motion by supplementing previous depositions ad
hoc with a new affidavit, and no case would ever be appropriate for
summary judgment.

See also Fenger v. Flathead County (1996), 277 Mont. 507, 510-12, 922 P.2d
1183, 1184-86; Kaseta v. Northwestern Agency of Great Falls (1992), 252 Mont. 135,
138-40, 827 P.2d 804, 806-07.

The District Court observed that any inconsistencies in Jarold's testimony was not
a sudden and unexplained revision of testimony to create an issue of fact where none
existed before. We will not second guess the District Court on this issue. We conclude

that any conflict or ambiguity in Jarold's testimony should be for a jury to sort through
and ultimately resolve.

ISSUE 3

Did the District Court err in denying the motion to dismiss filed by UNR and Rohn?

In their brief in support of summary judgment the defendants requested that the District Court dismiss the Woods' case because the failed section of the tower was missing. The defendants specifically allege that the Woods failed to preserve the evidence. We note that the District Court did not explicitly deny their motion; however, it is clear from the memoranda and orders granting summary judgment to the defendants that the court denied the defendants' motion.

Although the conduct of the Woods or their attorneys was not seriously at issue, the defendants' motion was essentially a request to dismiss the action as a sanction under Rule 37(b)(2)(C), M.R.Civ.P. Our standard of review of sanctions imposed under Rule 37 is whether the district court abused its discretion. First Bank (N.A.)--Billings v. Heidema (1986), 219 Mont. 373, 375, 711 P.2d 1384, 1386.

The crux of the defendants' claim is that the case should be dismissed because it is impossible for them to examine and evaluate the failed section of the tower. Without this opportunity they claim that they are highly prejudiced and their ability to present a defense is significantly impaired.

The absence of the failed section of the tower certainly makes litigation of the manufacturing defect claim difficult for both parties. This Court has stated, however, that a claim of product defect may be proven by circumstantial evidence and inferences therefrom, as well as by direct evidence. Eisenmenger by Eisenmenger v. Ethicon, Inc. (1994), 264 Mont. 393, 401, 871 P.2d 1313, 1318, cert. denied (1994), 513 U.S. 919; Brandenburger, 162 Mont. at 517, 513 P.2d at 274. A plaintiff does not meet his or her burden of proof, however, by merely establishing that an accident occurred. Brown, 176 Mont. at 106, 576 P.2d at 717. In Brandenburger, we adopted the following standard of proof to establish a defect in a manufacturer's product:

> The nature and quality of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally varies. The most convincing evidence is an expert's pinpointing the defect and giving his opinion on the precise cause of the accident after a thorough inspection. If an accident sufficiently destroys the product, or the crucial parts, then an expert's opinion on the probabilities that a defect caused the accident would be helpful. If no such opinion is possible, as in the present case, the user's testimony on what happened is another method of proving that the product was defective. If the user is unable to testify, as where the accident killed him or incapacitated him, no other witness was present at the time of the accident, and the product was destroyed, the fact of the accident

and the probabilities are all that remain for the party seeking recovery. At this point the plaintiff can attempt to negate the user as the cause and further negate other causes not attributable to the defendant. These kinds of proof introduced alone or cumulatively are evidence which help establish the presence of a defect as the cause of the damage.

Brandenburger, 162 Mont. at 518, 513 P.2d at 275 (quoting Stewart v. Budget Rent-A-Car Corp. (1970), 52 Haw. 71, 75, 470 P.2d 240, 243). Here, both sides have offered testimony through their expert affidavits on the presence of a defect and when it occurred even though the failed part is missing.

Accordingly, we conclude that the District Court did not abuse its discretion in denying the defendants' motion to dismiss because of the missing evidence.

CONCLUSION

After review of the record in this case, we conclude that the evidence submitted by the Woods was sufficient to withstand the defendants' motion for summary judgment.

We hold that the District Court erred in granting summary judgment in favor UNR and Rohn on the Woods' manufacturing defect and failure to warn claims. We affirm the District Court's denial of the defendants' motion to dismiss which was premised on the missing evidence.

In conclusion, the judgment of the District Court is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

/S/ JIM REGNIER


We Concur:

/S/ J. A. TURNAGE
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ WILLIAM E. HUNT, SR.