JUSTICE McKINNON,
concurring in part and dissenting in part.
¶55 In my opinion, the District Court and this Court have erred (1) in finding that NUFI had a duty to defend, without considering whether the plaintiffs’ complaint “alleges facts, which if proven, would result in coverage,” Farmers Union Mut. Ins. Co. v. Staples, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381, and (2) in granting summary judgment *108 although there are genuine issues of material fact as to whether NUFI breached a duty to defend. I believe the District Court and this Court have failed to recognize that an insurer’s assertion of an opinion regarding the existence of coverage does not equate to an insurer’s outright refusal to defend. NUFI expressed an opinion, based on the facts alleged in the plaintiffs’ complaint, that coverage did not exist. In so doing, NUFI did not necessarily breach a duty to defend. In fact, Davis and Maxwell were represented by counsel throughout the disputed timeframe. Additionally, it is my view that this Court has also failed, in a fundamental respect, to appreciate the difference between a type of insurance colloquially known as directors and officers insurance, where the “insured v. insured” exclusion is a cornerstone of the policy, versus the more common form of casualty insurance, such as automobile and homeowners insurance. Finally, basic principles of due process require a hearing to determine not only the reasonableness of the stipulated settlement, but also whether it was made in good faith — that is, absent fraud and collusion. For all of these reasons, I dissent as to Issue 2 and subparts (a) and (c) of Issue 3.[1]
¶56 It is well established in Montana that an insurer’s duty to defend its insured arises when the insurer, through reference to pleadings, discovery, or final issues declared ready for trial, has received notice of facts representing a risk covered by the terms of the insurance policy. Grindheim v. Safeco Ins. Co. of Am., 908 F. Supp. 794, 798 (D. Mont. 1995) (citing cases); Staples, ¶ 20. The insurer must look to the allegations of the complaint to determine whether coverage exists under the policy, thus giving rise to the insurer’s duty to defend. Farmers Union Mut. Ins. Co. v. Rumph, 2007 MT 249, ¶ 14, 339 Mont. 251, 170 P.3d 934; Graber v. State Farm Fire & Cas. Co., 244 Mont. 265, 270, 797 P.2d 214, 217 (1990). The insurer is required to defend “unless there exists an unequivocal demonstration that the claim against the insured does not fall under the policy’s coverage.” Rumph, ¶ 14. Where the insurer refuses to defend a claim and does so unjustifiably, the insurer becomes liable for defense costs and judgments. Lee v. USAA Cas. Ins. Co., 2004 MT 54, ¶ 19, 320 Mont. 174, 86 P.3d 562.
¶57 In spite of this clear precedent, the Court holds — without examining whether the plaintiffs’ complaint alleged facts representing a risk covered by the terms of the Policy — that NUFI had a duty to *109 defend. Opinion, ¶¶ 27-30. In essence, we deny the insurer the right to contest a duty to defend in these proceedings by holding that the insurer should have brought a separate action to determine coverage. Opinion, ¶¶ 24,28. We thus foreclose the insurer from having a judicial determination of the existence of a duty to defend, which is distinct from a duty to indemnify, based on an actual examination of the allegations of the complaint and the terms of the Policy. Staples, ¶ 21. The complaint in these proceedings was filed in May 2010 in the Fourth Judicial District Court — a state court. It is not the complaint filed in federal court in 2007, which grew into the Nagrone litigation. The Court nevertheless finds, without any examination of the Policy or the instant complaint, that NUFI’s defense in the Nagrone litigation “potentially implicated” the Policy in the present proceedings. Opinion, ¶ 21<. I disagree with what appears to be a new standard for determining the existence of a duty to defend when we previously have been clear that a duty to defend may be found only after examining the allegations of the particular complaint to determine whether facts have been alleged representing a risk covered by the terms of the insurance policy.
¶58 The plaintiffs contend that their May 2010 complaint alleged Davis and Maxwell engaged in “wrongful conduct,” as defined in the Policy, and that this triggered the duty to defend. They claim that NUFI does not dispute the conduct of Davis and Maxwell was wrongful and that NUFI is therefore estopped from denying a duty to defend because NUFI defended Davis and Maxwell in the Nagrone litigation.
¶59 NUFI asserts that the Nagrone litigation is not the same as the present litigation and that the District Court erred in assuming otherwise. NUFI explains that the Nagrone lawsuit was brought against TMSI and TMSI’s officers and directors, including Davis and Maxwell, by former TMSI employees alleging that the actions leading to the 1998 merger violated federal law (ERISA). NUFI paid TMSI’s defense costs in the Nagrone litigation, subject to a reservation of rights. NUFI explains that TMSI isa plaintiff in the current action and is suing Davis and Maxwell in their capacities as officers and directors of Tidyman’s, LLC. Moreover, the current action is between insureds (thereby invoking one of the exclusions to coverage) because (1) five of the plaintiffs here are directors of the insured (Tidyman’s, LLC) and they have sued defendants Davis and Maxwell, who are also directors of the LLC; and (2) plaintiff TMSI, as a 60 percent security holder of the LLC, brought this lawsuit against two directors of the LLC (Davis and Maxwell) with the assistance of other insureds (five plaintiffs who *110 are also directors of the LLC). NUFI further argues that the factual basis of the complaint is, in substance, a claim against TMSI’s officers and directors for having allowed the LLC to be formed, and not the officers and directors of the insured LLC. In other words, NUFI asserts that the wrongful conduct forming the basis of the plaintiffs’ claims occurred prior to the formation of the insured LLC and was committed by officers and directors of TMSI, rather than officers and directors of the LLC. Clearly, NUFI had no duty to defend against claims premised on wrongful conduct committed by individuals before its insured, the LLC, even existed.
¶60 “The determination of whether the allegations of a complaint assert facts which represent a risk potentially covered by the terms of an insurance contract necessarily calls upon the court to construe the terms of the insurance contract.” Grindheim, 908 F. Supp. at 800. The construction of insurance contracts in Montana is governed by the general law of contract interpretation set forth in Title 28, chapter 3, MCA, and the caselaw that has developed thereunder in the context of insurance. Grindheim, 908 F. Supp. at 800. Absent an ambiguity, the language of an insurance contract governs its interpretation. Grindheim, 908 F. Supp. at 800; §§ 28-3-303, -401, MCA. When there is a dispute as to the existence of a duty to defend, the court must “compare[ ] allegations of liability advanced in a complaint with policy language to determine whether the insurer’s obligation to defend was ‘triggered.’ ” Staples, ¶ 22. In so doing, the court “must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated.” Staples, ¶ 22.
¶61 In spite of this precedent, the Court fails to “compare[ ] allegations of liability advanced in a complaint with policy language to determine whether the insurer’s obligation to defend was ‘triggered.’ ” Staples, ¶ 22. The Court does not even refer to the terms and provisions of the Policy or the allegations in the complaint, holding instead that “NUFI saw that the Policy was implicated... . NUFI defended Darts and Maxwell throughout the federal litigation.” Opinion, ¶ 27. This is the crux of the Court’s analysis on the existence of the duty to defend, and it is premised on the false notion that the pleadings in the federal litigation were “the same” as the pleadings in the present litigation. Opinion, ¶¶ 4,27.
¶62 NUFI explains that the Policy is a directors and officers (D & O) policy with an exclusion to coverage when an insured brings a lawsuit against another insured. The pertinent provisions are set forth in *111 Clause 8 and Endorsement 13. Clause 8, concerning defense costs, states in relevant part:
The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them. Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer .... This right [must be exercised within 30 days of the date the Claim is first made against an Insured, and the Insureds must not take any action, or fail to take any required action, that would prejudice the rights of the Insureds or the Insurer with respect to such Claim]. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false .or fraudulent....
When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company... in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.
The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer.... The Insurer’s consent shall not be unreasonably withheld....
Pursuant to Endorsement 13, which contains the “Insured v. Insured Exclusion,” the exclusions fisted in Clause 4 were amended to read, in relevant part, as follows:
The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured... (i) which is brought by any Insured (other than an Employee, but solely with respect to a Securities Claim) or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder’s Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured;....
¶63 We have on numerous occasions, in the context of determining whether a duty to defend arises, examined the insurer’s claim that an exclusion applies. See e.g. Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc., 2005 MT 50, ¶¶ 23-27, 33-45, 326 Mont.. *112 174, 108 P.3d 469; Town of Geraldine v. Montana Man. Ins. Auth., 2008 MT 411, ¶¶ 14-33, 347 Mont. 267, 198 P.3d 796; see also Grindheim, 908 F. Supp. at 801-08. Thus, NUFI’s claim that an exclusion applies should similarly be considered. If a duty to defend exists, and assuming NUFI has breached that duty, then NUFI may be held liable for defense costs and the judgment. But we cannot hold NUFI liable for the stipulated settlement in the absence of some examination of the Policy and the complaint. NUFI argues that the plain language of the D & O Policy excludes coverage for lawsuits between insureds. In my opinion, we are obligated at least to consider the plain language of the Policy and examine whether the named parties are insureds of NUFI.
¶64 The Court today effects a significant shift in our jurisprudence by holding that it is unnecessary to conduct such analysis if the plaintiffs’ claims “potentially implicate” the policy. Opinion, ¶ 30.-This broad and nebulous standard effectively moots any future need for an analysis of the policy and the complaint. Since practically any conceivable claim alleged against an insured could “potentially implicate” the policy, the insurer will have a duty to defend in every case. Under today’s decision, an insurer’s mere act of reading the policy and the complaint is evidence that the insurer recognizes the policy is “potentially implicated,” and is thus sufficient to trigger the insurer’s duty to defend. This is flat contrary to our precedents, which have held that the duty to defend is not triggered until an examination of the policy and the complaint actually reveals facts representing a risk covered by the terms of the policy. Staples, ¶ 20; Rumph, ¶ 14; Graber, 244 Mont, at 270, 797 P.2d at 217; Grindheim, 908 F. Supp. at 798. Merely examining the policy and the complaint to determine whether coverage exists has not — at least before today — been enough to trigger the duty to defend.
¶65 We have often observed that the “fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense” require, for example, that an insurer defend under a reservation of rights and pursue a declaratory judgment action to determine coverage.[2] Staples, ¶¶ 22, 28. Nevertheless, an insurer still *113 has the right to dispute the existence of the underlying duty to defend and to have a determination made by the court. While the more “prudent” process might be to defend, Opinion, ¶ 28, this does not remove the requirement that an initial assessment be made as to whether the terms of the policy have been invoked by the facts alleged in the complaint. Our decision today will have the effect of requiring insurance companies to defend insureds without any examination of the complaint, without any examination of the insurance policy, and regardless of whether coverage in fact exists. I dissent from this substantial revision the Court effects to the procedures for analyzing whether the duty to defend was triggered.
¶66 Assuming, for the sake of argument, that NUFI did have a duty to defend in this case, it is my view that the District Court and this Court have erred in concluding that there are no disputed facts regarding the breach of that duty. The following portions of the oral argument before the District Court are relevant:
THE COURT: So Mr. Amsden, NUFI in this case has essentially argued that they really didn’t breach a duty to defend because they paid these costs. Why aren’t they right?
MR. AMSDEN [co-counsel for the plaintiffs]: They didn’t pay all the costs. And they didn’t pay all the costs — even the cost they did pay, they didn’t pay timely....
MR. MACDONALD [co-counsel for NUFI]:... Plaintiffs assert that National Union breached a duty to defend. We dispute that... . If the Court doesn’t grant our motion for summary judgment that [is] pending, we think a hearing is required, nonetheless. And the hearing needs to address at least the following three issues. First, whether National Union breached any duty to pay defense costs, and if so, whether it was unjustified.... I actually think we’re entitled to present evidence, Your Honor, that we didn’t breach the duty. Mr. Beck [co-counsel for the plaintiffs] put on Mr. McPhee’s declaration. He’s relied on statements by Mr. McPhee and statements of counsel about whether or not we did pay or didn’t pay and whether we timely paid. We think there’s evidence that the Court must take before concluding that we breached any duty under the policy. We don’t think it’s something the Court can decide as a matter of law that we breached the duty under the policy. The cost that the insured’s counsel, Mr. Davis and Mr. Maxwell’s counsel have been paid, now they dispute that, so they stand up and say, you haven’t paid the *114 cost. We believe we have paid the cost. Now, Mr. — counsel for Mr. Maxwell maybe is sitting on costs that he hasn’t submitted, but he has submitted bills after October 28. He submitted bills in April of 2011, and they were paid.
So the policy here, unlike the policy in every one of the cases they cite, Your Honor, says squarely that the obligation to advance defense costs is prior to final disposition of the claim. It is a very different policy. These — as counsel indicated, this is a very different type of policy. A [¶] & O] policy for a sophisticated company, they negotiated 18 different endorsements to the policy. It wasn’t off the shelf. There were 18 endorsements negotiated by a sizeable company. And you have sophisticated insureds, Davis and Maxwell, who understood that their policy provided for paying of defense costs prior to final disposition of the claim. We think that’s happened. We don’t think there’s any breach.
Mr. Macdonald further explained to the District Court: “The duty under this policy, Your Honor, is to pay before final disposition of claim.... [NUFI] already paid the invoices. National Union has said, it will continue to say it will pay the defense costs of Davis and Maxwell unless and until this Court grants summary judgment in favor of National Union, Your Honor.” Macdonald emphasized that “Mr. Maxwell and Mr. Davis have never been left without counsel in this case.”
¶67 As the moving party, the plaintiffs have the initial “burden of demonstrating a complete absence of any genuine factual issues.” Wood v. Old Trapper Taxi, 286 Mont. 18, 24, 952 P.2d 1375, 1379 (1997). If the plaintiffs meet this burden, the nonmoving party (NUFI) then has the opportunity to demonstrate that a genuine issue of material fact does exist. Semenza v. Kniss, 2008 MT 238, ¶ 18, 344 Mont. 427, 189 P.3d 1188. Significantly, “all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment” — i.e., NUFI. Wood, 286 Mont, at 23, 952 P.2d at 1379. Furthermore, generally speaking, “whether [a] duty has been breached is a question of fact to be decided by the finder of fact.” Brown v. Demaree, 272 Mont. 479, 482, 901 P.2d 567, 569 (1995) (emphasis omitted); see also Precision Theatrical Effects, Inc. v. United Banks, N.A., 2006 MT 236, ¶ 23, 333 Mont. 505, 143 P.3d 442 (the breach of a duty is a question of fact not susceptible to summary judgment); Lorang v. Fortis Ins. Co., 2008 MT 252, ¶ 136, 345 Mont. 12, 192 P.3d 186 (questions of fact may be determined as a matter of *115 law on summary judgment only if reasonable minds could reach but one conclusion on the issue).
¶68 Here, NUFI has shown that there are disputed facts regarding whether it breached a duty to defend, thus precluding summary judgment. To begin, Chartis’s August 5, 2010 letter on behalf of NUFI — informing counsel for Davis and Maxwell (King and McPhee, respectively) that there was no coverage — did not state that NUFI would deny defense costs. Contrary to the Court’s description (Opinion, ¶ 5), the letter did not “assert[ ] that NUFI would no longer cover defense costs in the matter.” In fact, the letter contains no discussion of defense costs. The letter simply advised counsel of NUFl’s position on coverage. Consistent with our precedent, the letter analyzed the plaintiffs’ complaint and the terms of the Policy, then conducted a “coverage analysis.” Based on Chartis’s understanding of Tidyman’s history, the letter concludes: “[I]t appears that the Complaint filed on May 21, 2010, in the Montana Fourth Judicial District, County of Missoula, does not implicate the Policy. We ask that you confirm our understanding of the history of the company.” NUFI was clear that this was its “coverage position” and that “[i]f you [King or McPhee] are aware of any information that would indicate that National Union’s coverage position is inaccurate, either factually, legally or otherwise, please provide us with that information as soon as possible.” The letter did not state that NUFI was denying all further requests for reimbursement of defense costs. Indeed, McPhee continued to bill NUFI for services rendered in representing Maxwell after the August 5,2010 letter, and King sent a letter dated September 2,2010, inquiring “whether [NUFI] is going to continue to pay for the costs of defense” — an inquiry that would have been unnecessary had the August 5,2010 letter actually addressed defense costs.
¶69 An explicit denial of defense costs arguably did not occur until the October 28, 2010 letters from Chartis to McPhee and King, which stated: “[NUFI] is not going to continue to pay the costs of defense of this matter.” This, in fact, is the letter that the plaintiffs’ counsel referred to in the District Court as the “bombshell” letter. Notably, by that date (i.e., by the October 28, 2010 denial), the stipulated settlement had already been finalized. Evidence in the record indicates that within a week of the August 5,2010 coverage letter, McPhee and King agreed with counsel for the plaintiffs upon the material terms of the stipulation, including the $29 million stipulated judgment, with no notice to NUFI. Davis signed the “Stipulation Resulting from Insurer’s Refusal to Provide Coverage” on October 25,2010, three days before *116 the “bombshell” letter was issued. Accordingly, at the very least, the parties’ actions and communications during this timeframe establish that an issue of fact exists as to whether the August 5, 2010 letter amounted to a refusal to defend. The District Court and this Court have exceeded their authority by resolving this factual issue with a particular interpretation of the letter — one that plainly favors the plaintiffs.
¶70 Moreover, in response to claims that it did not reply to inquiries from Davis’s counsel, NUFI has provided evidence that it twice attempted to contact King and that it actually advised King and McPhee that it would pay defense costs. In contrast to the plaintiffs’ claim that McPhee was owed $18,000 and had not been paid in months, NUFI has provided evidence that it paid the invoices it received in an appropriate timeframe and that counsel for Davis and Maxwell have always been paid. NUFI provided the affidavit of Lermond, who represented that NUFI would pay the defense costs of Davis and Maxwell to pursue the motion to dismiss and that she paid defense costs of the litigation incurred during the second half of 2010 up to early May 2011. Significantly, Maxwell and Davis did, in fact, have counsel during the timeframe in dispute, which undermines the Court’s finding (Opinion, ¶ 27) of a breach of duty. See State Farm Fire & Cas. Co. v. Schwan, 2013 MT 216, ¶ 23,371 Mont. 192, 308 P.3d 48 (“Neither does the failure of State Farm Fire to pay for Stacey’s fees constitute a breach of the duty to defend in these circumstances. First, that failure did not affect the Turners — defense counsel and a full defense were provided to them. State Farm Fire further notes that a request for payment of Stacey’s fees has not been made to it. As noted above, payment of counsel in this context is a matter of contribution between insurers.”). Finally, there is a dispute of fact regarding whether NUFI did defend while seeking a judicial determination, through their motion to dismiss, regarding the existence of coverage. ¶71 The Court discounts NUFI’s evidence, choosing instead to credit the plaintiffs’ allegations and, based on those allegations, to hold that NUFI breached a duty to defend. Opinion, ¶¶ 27,31. The Court goes so far as to make a finding that NUFI “failed to defend its insureds or advance defense costs,” Opinion, ¶ 31 — two propositions that are disputed, with documentary evidence, by NUFI. The Court’s approach in this respect is clearly in error. It is inappropriate for a court deciding a motion for summary judgment to weigh evidence, to choose one disputed fact over another, or to assess the credibility of the witnesses. Andersen v. Schenk, 2009 MT 399, ¶ 2, 353 Mont. 424, 220 P.3d 675; *117 Corporate Air v. Edwards Jet Ctr., 2008 MT 283, ¶ 28,345 Mont. 336, 190 P.3d 1111. If the court finds itself having to resolve factual disputes, then summary judgment is not appropriate. Larson Lumber Co. v. Bilt Rite Constr. & Landscaping LLC, 2014 MT 61, ¶ 32, 374 Mont. 167, 320 P.3d 471. The parties’ allegations and supporting evidence establish genuine issues of material fact regarding NUFI’s alleged breach of a duty.
¶72 The District Court, and this Court, also failed to consider whether Davis and Maxwell breached the Policy language regarding stipulated judgments by failing to seek NUFI’s approval of the stipulated settlement during the time when records show that NUFI was being billed for defense costs and was continuing to pay those costs. In this regard, the Policy includes a consent clause regarding stipulated judgments:
The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer’s consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy. i
(Emphasis added.)
¶73 The timing of events is critical in determining whether Davis and Maxwell entered into a stipulated settlement, without NUFI’s consent, in contravention of the foregoing provision. As noted, evidence in the record — primarily email communications and drafts of the stipulated settlement — indicate that King, McPhee, and the plaintiffs’ counsel were engaged in discussions regarding the material terms of the stipulated settlement in early August 2010, and that Davis signed the final stipulation on October 25,2010 — all before the “bombshell” letter of October 28, 2010, to which the Court refers (Opinion, ¶ 27). This evidence suggests that the supposed breach of the duty to defend, which the Court finds as a matter of law (Opinion, ¶ 27), occurred after the stipulated settlement had been finalized by McPhee, King, and the *118 plaintiffs’ counsel and executed by Davis. The stipulation thus was • reached without notice to NUFI and arguably before any communication regarding whether NUFI would continue to pay defense costs. A fact-finder is needed to resolve whether this series of events violated the consent clause and whether NUFI actually breached its duty to defend.
¶74 Given these disputed facts, the plaintiffs’ burden, and our precedent requiring that “all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of [NUFI],” Wood, 286 Mont, at 23,952 P.2d at 1379, it is my view that summary judgment is inappropriate. A stipulated judgment should be . presumptively valid only when the insured has breached a duty to defend. Based on the foregoing discussion, NUFI cannot be held to have breached a duty to defend as a matter of law.
¶75 In reaching a contrary result, the Court has failed to appreciate the fundamental distinction between directors and officers liability insurance and the more general form of casualty insurance. D & O insurance is a type of insurance designed to protect directors and officers who were “discharging duties to the corporation when the actionable conduct arose.” 9A Lee R. Russ et al., Couch on Insurance 3D, § 131:31, 131-36 to 131-37 (Thomson/West 2005). D & O insurance developed as shareholder’s derivative suits and class actions became more common and directors and officers sought indemnification against the risks of liability. Biltmore Assocs., LLC v. Twin City Fire Ins. Co., 572 F.3d 663, 668 (9th Cir. 2009). Insured corporations, in turn, began suingtheir own directors and officers to recoup operational losses caused by poor business decisions. In reaction to these lawsuits, the insured-versus-insured exclusion arose in D & O policies to protect the insurer against collusion and unintended expansion of coverage. Biltmore, 572 F.3d at 668. The Ninth Circuit explained in Biltmore:
The trigger for liability insurance is a claim by someone hot under the control of the insured himself. By contrast, people buy casualty insurance against the risks created by their own bad luck or carelessness. Thus, one buys fire insurance and gets indemnified even for carelessly leaving a fit candle untended and burning down one’s own house. And one buys automobile comprehensive and collision coverage to get indemnified for carelessly damaging one’s own car.
Though there is overlap, many of the risks that affect the price of liability insurance differ from the risks that affect casualty insurance, particularly moral hazard and collusion. For example, *119 almost nobody intentionally induces someone else to collide with his car, but someone might have an interest in burning down his own house if he owed more on it than it was worth. Companies have traditionally purchased “fidelity bonds” to insure the company against employees’ dishonesty. Thus if an employee was “bonded” and stole from the company, the insurance company that had issued the bond would have to indemnify the company for the loss.
Because risks such as collusion and moral hazard are much greater for claims by one insured against another insured on the same policy than for claims by strangers, liability policies typically exclude them from coverage. Allowing such claims would turn liability insurance into casualty insurance, because the company would be able to collect from the insurance company for its own mistakes, since it acts through its directors and officers. The exclusion protects of course against collusion, and also against the risk of selling liability insurance for what amounts to a fidelity bond. If the exclusion were ignored, then those companies who only want to pay for protection against third party claims they cannot control would have to bear the additional financial burden of paying for claims over which companies have more control.
572 F.3d at 668-69 (emphasis added, footnote omitted). Thus, the Policy’s Insured v. Insured exclusion protects the insurer, NUFI, against collusive lawsuits as alleged here.
¶76 D & O liability policies “generally do not obligate the insurer to provide a defense, but only to reimburse expenses incurred in defense of claims against the insured.” Russ et al., supra, § 131:31, at 131-36. Consistent with these principles, Gary Zadick (co-counsel for NUFI) stated in the District Court: “I first wanted to emphasize this policy is different. This is a policy that says, we’ll reimburse your defense costs.” Zadick continued:
This is a different policy. This is a reimbursement policy. Ms. Lermond paid the invoice of Davis’ counsel for the Montana court action, November 2010. That’s in the record billing invoices. Ms. Keane, who is here today, has been paying the bill since then. She paid the invoice of Mr. Maxwell in the Spring of 2011 when it was submitted.
Zadick explained:
Under a liability policy, Your Honor, the insurer goes out and selects the attorney, pays him from day one. The insured doesn’t advance any cost. Under this type of policy [in the present case], *120 a D & O policy, the defense costs are billed to the company, the insured. They pay them and they submit for reimbursement. So there is a difference.
This case, therefore, is distinguishable from cases involving an alleged breach of the duty to defend under a traditional casualty insurance policy — a fact the Court has failed to appreciate in its analysis.
¶77 As a final matter, I believe the Court’s “procedural” and “substantive” distinction regarding reasonableness (subparts (a) and (b) of Issue 3) is inartful and unnecessary. While we have never required a court to conduct a reasonableness hearing, we have always held that the amount of the judgment must be fair, reasonable, and in good faith. Indep. Milk & Cream Co. v. Aetna Life Ins. Co. , 68 Mont. 152, 157, 216 P. 1109, 1110 (1923); Keating v. Universal Underwriters Ins. Co., 133 Mont. 89, 100, 320 P.2d 351, 357 (1958); Washington Water Power Co. v. Morgan Elec. Co., 152 Mont. 126, 138, 448 P.2d 683, 689 (1968); see also § 27-1-302, MCA (“Damages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages contrary to substantial justice, no more than reasonable damages can be recovered.”); State Farm Mut. Auto. Ins. Co. v. Freyer, 2013 MT 301, ¶ 36, 372 Mont. 191, 312 P.3d 403 (recognizing the concerns that “[t]he insured has little incentive to minimize the settlement amount in negotiating a stipulated judgment” and that “there [is no] assurance that a stipulated judgment represents a proper calculation of the actual damages”); cf. LeMond v. Yellowstone Dev., LLC, 2014 MT 181, ¶¶ 50-52, 375 Mont. 402, 336 P.3d 345 (holding that even where the parties have stipulated to a particular remedy — in this case, a constructive trust — the trial court is still required to determine whether the stipulation constitutes an appropriate measure of relief). Certainly a reasonableness hearing, if one is requested, should be mandatory where, as here, the insurer has raised plausible concerns about the fairness, reasonableness, and good faith of the stipulated settlement.
¶78 In this regard, I agree that once a duty to defend has been breached, the stipulated judgment is presumed reasonable. Opinion, ¶ 41.1 further agree that the district court should be given discretion to define the parameters of the hearing and the scope of discovery. Opinion, ¶ 44. However, I disagree that the facts alleged by NUFI here do not create a genuine issue of material fact as to the existence of collusion. Opinion, ¶ 48. NUFI presents evidence that Davis, Maxwell, and the plaintiffs, through respective counsel, negotiated and partially *121 executed the $29 million stipulated settlement before NUFI expressly refused to pay defense costs. Additionally, NUFI alleges that the plaintiffs improperly manipulated their pleadings in an attempt to create coverage. In Burns v. Underwriters Adjusting Co., 234 Mont. 508, 765 P.2d 712 (1988), we rejected an attempt to manipulate the pleadings in order to manufacture coverage, observing: “ ‘To hold otherwise is to invite undercover deals, lack of candor, and manipulation of the tort pleadings as a device for involving an insurer who could not otherwise be involved.’ ” 234 Mont. at 510-11, 765 P.2d at 713 (quoting Farmers & Merchs. State Bank v. St. Paul Fire & Marine Ins. Co., 242 N.W.2d 840,844 n. 7 (Minn. 1976)).
¶79 I find it truly a sad day for justice in this State, and very likely a huge blow to the public’s belief that the courts provide fair resolutions of disputes, when this Cotut dismissively says “so what” to a stipulated judgment that allegedly was obtained by collusion, and when this Court further condones this as “nothing other than the usual custom and practice in which parties engage in Montana as a consequence of an insurer’s failure to defend.” Opinion, ¶ 48 (internal quotation marks omitted). Courts exist to administer justice fairly, regardless of whom and what a particular party represents. In my opinion, there is never a place for collusion in the administration of justice.
¶80 While I concur in the Court’s decision as to Issues 1 and 4, and in the Court’s holding under subpart (b) of Issue 3,1 dissent as to Issue 2 and subparts (a) and (c) of Issue 3.

 I concur in the Court’s decision as to Issues 1 and 4, and in the Court’s holding under subpart (b) of Issue 3.

 On August 12,2010, just seven days after NUFI’s letter to counsel for Davis and Maxwell opining that there was no coverage, the plaintiffs filed an amended complaint in the instant lawsuit adding NUFI as a defendant and asserting a declaratory judgment claim to determine coverage under the policy. NUFI filed a motion to dismiss addressing the coverage issue. Thus, the matter of coverage was pending before the District Court.